IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br>v.<br><br>PHILIP KAY LYMAN AND<br>MONTE JEROME WELLS,<br><br>                     Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR A NEW TRIAL**<br><br>Case No. 2:14-cr-00470-DN<br><br>District Judge David Nuffer |

Defendant Philip Kay Lyman has filed a Motion[1] for a New Trial ("Motion") pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Defendant Monte Jerome Wells joined Mr. Lyman's Motion on August 26, 2015.[2] After carefully reviewing the parties' filings and relevant legal and statutory authorities, the Motion is DENIED for the reasons set forth below.

## BACKGROUND

On May 10, 2014, Defendants and others rode through an area of Recapture Canyon located in San Juan County, Utah. The Bureau of Land Management ("BLM") had closed that area of Recapture Canyon to motorized use sometime in 2007 ("Closed Area"). The May 10, 2014 ride led to charges against the Defendants and two other individuals.

On December 5, 2014, the United States of America ("Government") filed a Superseding Misdemeanor Information charging Mr. Lyman, Mr. Wells, and two other individuals with violating 43 U.S.C. §§ 1701, 1733 and 43 C.F.R. § 8341.1 by knowingly and willfully operating

---

[1] Docket no. 185, filed August 25, 2015.

[2] *See* Docket Text Order, docket no. 188, filed August 26, 2015.

an off-road vehicle in an area closed to such vehicles.[3] These same individuals were also charged with participating in a conspiracy with others to engage in the operation of off-road vehicles in an area closed to such vehicles, in violation of 18 U.S.C. § 371.[4] On May 1, 2015, the jury found Mr. Lyman and Mr. Wells guilty on both counts.[5]

Defendants allege that new evidence was discovered after their conviction which the Government "inadvertently"[6] failed to disclose. The allegedly undisclosed evidence is a 1979 Map[7] which was stored in the BLM files.[8] Defendants argue that the 1979 Map "shows that the road on which Mr. Lyman and others traveled on May 10, 2014 was a public highway, an R.S. 2477 right-of-way[,]" and therefore not closed to off-road vehicles.[9]

Defendants also point out that on August 5, 2015, the State of Utah notified the United States Department of the Interior of its intent to sue ("State's Intent to Sue") to quiet title to the Recapture Canyon R.S. 2477 right-of-way. That is, the State has taken the position that an R.S. 2477 right-of-way exists and has existed since at least 1976 on the Recapture Canyon Road. Defendants allege that this is the same road traveled by Defendants in the present case. Defendants' request for a new trial is based on the discovery of the 1979 Map and on the State's Intent to Sue.

---

[3] Superseding Misdemeanor Information, docket no. 41, filed December 8, 2014.

[4] *Id.*

[5] Verdict, docket no. 149, filed May 1, 2015.

[6] Motion at 4.

[7] *Id.* at 2.

[8] Defendants point out that there were other documents associated with the 1979 Map that were also not produced during discovery. *See* Motion at 3 (a 1981 document granting the San Juan County Water Conservancy District a right-of-way); *see also* Reply Memorandum in Support of Motion for a New Trial at 2 ("Reply"), docket no. 225, filed October 16, 2015 (a 1975 version of the 1979 Map). Because these other documents do not change the analysis and conclusion below, only the 1979 Map will be discussed.

[9] Motion at 3.

## DISCUSSION

### A. There is no *Brady* violation because the evidence is inadmissible and therefore not material

Defendants argue that they are entitled to a new trial based on the Government's alleged failure to disclose exculpatory information—the 1979 Map—as required by *Brady v. Maryland*.[10] "A defendant who seeks a new trial under Rule 33 based on an alleged *Brady* violation must show that '(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material.'"[11]

Defendants assume that the 1979 Map is evidence that would have been admissible at trial, and instead focus their arguments on the suppression of the 1979 Map by the Government.[12] But the Government argues that the 1979 Map is not admissible evidence and therefore a new trial should not be ordered.[13] In order to obtain a new trial on the basis of newly discovered evidence, that evidence must be admissible in a new trial.[14]

The 1979 Map is not admissible in a new trial because Defendants do not have standing to challenge the legality of the BLM's decision to close the area in question by asserting an R.S. 2477 right-of-way defense. Whether the area of Recapture Canyon Defendants traveled was legally closed during the ride on May 10, 2014 was brought before Judge Shelby in a motion to

---

[10] 373 U.S. 83 (1963).

[11] *United States v. Velarde*, 485 F.3d 553 (10th Cir. 2007) (quoting *United states v. Quintanilla*, 193 F.3d 1139, 1149 & n. 10 (10th Cir. 1999)).

[12] Defendants argue that "[b]oth the 1975 and 1979 Monticello W Maps show a road, denoted by a red dashed line, running through Recapture Canyon. The red dashed line indicates that this road is a public highway or 'travel' way." Reply at 5. The Government maintains that "[e]ven assuming that the red lines on the map are roads or trails, nothing indicates whether they are federal, state, or county roads, or R.S. 2477 rights-of-way." Memorandum in Opposition to Motion for a New Trial at 13 ("Opposition"), docket no. 216, filed October 9, 2015.

[13] Opposition at 6.

[14] *See e.g. United States v. Hill*, 737 F.3d 683, 687 (10th Cir. 2013) *cert. denied*, 134 S. Ct. 1905, 188 L. Ed. 2d 934 (2014) ("Implicit in a claim of newly discovered evidence is that there is new *evidence*—that is, material that is admissible at trial.").

dismiss filed by Mr. Lyman.[15] Judge Shelby rejected Mr. Lyman's motion and held that the Closed Area was lawfully closed to motorized use during the May 10, 2014 ride.[16] The Government, therefore, proved the "closed road" element of the offense. The legality of the trial closure was later confirmed in jury instruction no. 30, which received no objection from the parties. That instruction reads:

> As I told you earlier, you are the judges of the facts in this case. I am the judge of the law. One of the issues of law I have already decided in this case concerns the legality of the BLM's closure of certain trails in Recapture Canyon. I have already ruled that the BLM's closure of sections of Recapture Canyon to off-road vehicles was enacted on September 13, 2007 pursuant to 43 C.F.R. § 8341.2 was lawful and was in effect on May 10, 2014.[17]

On April 10, 2015, the Government filed a motion in limine to preclude Defendants from presenting any evidence or argument that "the closed road in Recapture Canyon is a right of way under R.S. 2477[.]"[18] The Government argued that "Defendants should not be able to put forth evidence purporting to establish that the road that BLM closed in Recapture Canyon is an R.S. 2477 right of way because Defendants lack standing to do so."[19] Mr. Wells filed a response to the Government's motion in limine, in which he stated that he was not planning on pursuing an R.S. 2477 right-of-way defense at trial.[20] Mr. Lyman did not file a response to the motion in limine.[21] Judge Shelby granted the Government's motion in limine on April 22, 2015.[22]

---

[15] Motion to Dismiss Misdemeanor Information, docket no. 78, filed March 10, 2015.

[16] *See* April 1, 2015 Transcript at 41–44, docket no. 202, filed September 17, 2015.

[17] Jury Instructions at 31, docket no. 147, filed May 1, 2015.

[18] Motion in Limine at 1, docket no. 101, filed April 10, 2015.

[19] *Id.* at 4.

[20] Response to Government's Motion in Limine, docket no. 115, filed April 17, 2015.

[21] *See* April 22, 2015 Transcript at 14, docket no. 203, filed September 17, 2015.

[22] *See* Minute Entry, docket no. 131, filed April 22, 2015.

Defendants now argue that they would have opposed the Government's motion in limine had the 1979 Map been disclosed.[23] Whether the Defendants would have opposed the Government's motion in limine is irrelevant because it does not change the fact that, as a matter of law, Defendants do not have standing to raise an unadjudicated R.S. 2477 defense.

Judge Tena Campbell addressed the issue of whether a criminal defendant has standing to raise an unadjudicated R.S. 2477 defense in *United States v. Jessop*.[24] Mr. Jessop was charged with operating an off-road vehicle on federal public land closed to off-road vehicle travel, in violation of 43 C.F.R. § 8341.1(c)—the same statute violated by Defendants.[25] "The non-jury criminal matter was brought before a United States Magistrate Judge for resolution."[26] Mr. Jessop wanted to raise an R.S. 2477 defense. "As the basis for his defense, Mr. Jessop contended that the area where he traveled, sometimes referred to as a right-of-way, was not federal but rather was reserved to the State of Utah by historic statute R.S. 2477 and the Federal Land Policy and Management Act ("FLPMA")."[27] This is the same argument that Defendants are trying to raise through the 1979 Map.

The magistrate judge found that Mr. Jessop did not have standing to challenge the legality of the BLM's closure of the right-of-way at issue in that case, and granted the government's motion in limine to exclude an R.S. 2477 defense as a matter of law.[28] The magistrate judge stated, among other things, that Mr. Jessop "lacks standing to assert, and this court lacks jurisdiction to adjudicate the R.S. 2477 right-of-way Defendant believes exists. . . .

---

[23] Motion at 9.

[24] 2010 WL 5395091, Nos. 2:08-CR-245-TC, 2:06-CR-553-RTB (D. Utah, Dec. 27. 2010).

[25] *Id.* at *1.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[O]nly a governmental entity may seek a court, through the exclusive waiver of sovereign immunity in the Quite Title Act (28 U.S.C. § 2409a) in a properly filed lawsuit, to adjudicate a claimed R.S. 2477 right-of-way."[29]

Mr. Jessop appealed his conviction to Judge Tena Campbell, "claiming that he, as a criminal defendant, did have standing to assert the defense, and further, that the United States failed to establish a prima facie case against him because it did not prove that the area was in fact federal land properly closed to off-road vehicles."[30] Judge Campbell affirmed the magistrate judge's ruling. Judge Campbell held that Mr. Jessop's "R.S. 2477 defense is not permissible as a matter of law."[31] In so holding, Judge Campbell explained:

> [Mr. Jessop] misstates what the BLM must prove in his case. Here, BLM presented uncontested evidence that it went through the proper procedures to close the area to [off road vehicle] use. Mr. Jessop does not challenge those facts. Nor does he suggest that any court has issued a finding under the Quiet Title Act regarding R.S. 2477 status of the Broad Hollow area. Instead, he generally challenges the BLM's authority to close the area. His argument fails because it has already been established as a matter of law that BLM has the authority to close the area. Specifically, a legal presumption in favor of the federal land manager cannot be overcome absent completion of a valid Quiet Title Act lawsuit resulting in the judicial finding that an R.S. 2477 right-of-way exists."[32]

Similar to *Jessop*, Defendants in the present case argue that they were traveling on an existing right-of-way over federal land granted by an R.S. 2477. They contend that the 1979 Map reveals the existence of an R.S. 2477 right-of-way and therefore negates an essential element of the charged offense—whether the area they traveled was closed. They do not contend that there has been any adjudication of an R.S. 2477 right-of-way.

---

[29] *Id.*

[30] *Id.* at *2; Judge Campbell reviewed the magistrate judge's decision under Federal Rule of Criminal Procedure 58(g)(2)(b).

[31] *Id.* at *3.

[32] *Id.*

Defendants argue that "an R.S. 2477 right-of-way exists with 'no administrative formalities' and 'without formal action by public authorities.'"[33] Defendants are correct that "[a]cceptance of an R.S. 2477 right of way in Utah . . . [simply] requires continuous public use for a period of ten years."[34] For unadjudicated R.S. 2477 claims, however, "determining when a highway is deemed to be dedicated to the use of the public, '[t]he presumption is in favor of the property owner [the United States]; and the burden of establishing public use for the required period of time is on those claiming it.'"[35]

The Quiet Title Act provides the exclusive means by which a claimed right in federal property may be adjudicated.[36] Because an alleged right-of-way under R.S. 2477 is a "property right[] ostensibly vested in the Counties by operation of the statute, . . . disputes concerning property rights on federal land must be brought into federal court pursuant to the Quiet Title Act[.]"[37] "This is no less true where a plaintiff alleges that the existence of an R.S. 2477 right-of-way invalidates an agency's decision to close or limit the use of a road."[38] Thus, a claimed R.S. 2477 right-of-way may only be adjudicated with a Quiet Title Act lawsuit. And until such time an R.S. 2477 claim has been adjudicated in a Quiet Title Act lawsuit between governmental entities, a presumption in favor of the Government applies.[39]

---

[33] Motion at 5 (quoting *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735, 768 (10th Cir. 2005) ("[T]he establishment of R.S. 2477 rights of way require[] no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right [is] vested.")).

[34] *Southern Utah Wilderness Alliance*, 425 F.3d at 769, n. 19, 771.

[35] *Id.* at 768 (quoting *Leo M. Bertagnole, Inc. v. Pine Meadow Ranches*, 639 P.2d 211, 213 (Utah 1981)).

[36] *See* 28 U.S.C.A. § 2409a; *see also Block v. North Dakota*, 461 U.S. 273, 286 (1983); *Southwest Four Wheel Drive Ass'n v. Bureau of Land Management*, 363 F.3d 1069, 1071 (10th Cir. 2004); *Rosette, Inc. v. United States*, 141 F.3d 1394, 1396–97 (10th Cir. 1998).

[37] *Kane County v. Kempthorne*, 495 F.Supp.2d 1143, 1159 (D. Utah 2007).

[38] *Id.*

[39] *See* 28 U.S.C. § 2409a(b) (providing that the "United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree").

Defendants contend that *Jessop* did not address the constitutional issue raised in the present Motion. They argue that "[i]n the civil context, there is no issue with requiring a dispute over an R.S. 2477 right-of-way to be resolved through a Quiet Title lawsuit between governmental entities. However, applying that rule in a criminal case to preclude a defense creates a constitutional issue of due process."[40] According to Defendants, "precluding this evidence not only improperly relieves the Government from having to prove one of the essential elements of its case, but also creates an irrebuttable presumption that this element, *i.e.*, that the BLM had the authority to close the right-of-way to off-road vehicles, has been met."[41] Defendants further argue that "it is not necessary to litigate a Quiet Title action in a criminal case in order to permit a defendant to raise an R.S. 2477 defense. . . . For example, a 'not guilty' verdict based, in whole or in part, on an R.S. 2477 defense does not resolve any issue against the government. It merely reflects that a jury had a reasonable doubt whether an R.S. 2477 right-of-way existed over the area in question."[42]

Defendants' due process violation argument is incorrect. FLPMA imposes no specific requirement on the BLM to identify and determine all R.S. 2477 rights-of-way before closing certain areas to off-road vehicles.[43] Instead, as mentioned above, when determining whether a valid R.S. 2477 right-of-way exists, "the presumption is in favor of the property owner[, the United States]; and the burden of establishing public use for the required period of time[—at least ten years sometime prior to the adoption of FLPMA in 1976—] is on those claiming it."[44] Thus, Defendants' claim that precluding an R.S. 2477 defense "creates an irrebuttable

---

[40] Motion at 5.

[41] *Id.* at 5–6.

[42] *Id.* at 7.

[43] 43 U.S.C.A. § 1712(c) (providing a list of criteria for development and revision of land use plans).

[44] *Southern Utah Wilderness Alliance*, 425 F.3d at 768 (internal quotation marks and citation omitted).

presumption . . . that the BLM had the authority to close the right-of-way to off-road vehicles" is incorrect. The presumption is rebuttable by an appropriate claimant that carries its evidentiary burden in an appropriate forum—in a Quiet Title Action by a government entity that has standing to raise a R.S. 2477 claim.

The limited waiver of sovereign immunity found in the Quiet Title Act extends only to governmental entities, not private parties. Permitting a R.S. 2477 defense to challenge the legality of the BLM's decision to close the area in question would be contrary to the limited waiver of sovereign immunity granted by the Quiet Title Act and would effectively allow any private party to assert an adjudicated R.S. 2477 defense as a means to open closed areas of federal public land.[45]

Accordingly, Defendants cannot rely on the 1979 Map to argue that the closure of Recapture Canyon was invalid. The presumption of validity of the closure applies until a valid R.S. 2477 right-of-way is established through a Quiet Title Act lawsuit brought by a government entity. The 1979 Map does not warrant a new trial because it is inadmissible evidence as a matter of law.

Because the 1979 Map and any other documents pertaining to an unproven R.S. 2477 right-of-way defense is inadmissible evidence, the 1979 Map fails to meet the materiality element of the *Brady* analysis because "there is [no] reasonable probability that, had the evidence

---

[45] Although criminal defendants do not have standing to challenge the legality of the BLM's closure of certain trails by asserting an R.S. 2477 right-of-way defense, it does not mean they are left without recourse. For example, Defendants in the present case were free to argue that they had a reasonable and good faith belief that the area in question was subject to an R.S. 2477 right-of-way and could have offered any admissible evidence relevant to their good faith belief. Their good faith belief in the existence of a right-of-way would be relevant to the *mens rea* element of the crime charged—whether they "knowingly and willfully" violated BLM regulation 43 C.F.R. § 8341.1(c). Under the circumstances of this case, however, the 1979 Map could not have been relevant to Defendants' good faith belief because at the time of the May 10, 2014 ride, Defendants were unaware of the 1979 Map and therefore could not have relied on the map.

been disclosed, the result of the proceeding would have been different."[46] The results of the proceeding in this case would not have been different even if the 1979 Map had been disclosed, because Defendants would not have been permitted to use it as evidence or otherwise raise a R.S. 2477 defense.

### B. A new trial based on the State's Notice of Intent to Sue is not warranted

The Tenth Circuit disfavors the granting of new trials and states that caution should be used in granting them.[47] The court grants a new trial only "in exceptional cases in which the evidence preponderates heavily against the verdict."[48] A defendant is entitled to a new trial based on newly discovered evidence where "(1) the evidence was discovered after trial; (2) the failure to discover the evidence was not caused by the defendant's lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence would probably produce an acquittal in a new trial."[49]

Defendants contend that "the State's Notice of Intent to Sue, in combination with the evidence which provided the basis for the State's intent to sue and which will form the basis for a future Quiet Title Action, is newly discovered evidence corroborating the existence of an R.S. 2477 right-of-way on the pertinent sections of Recapture Canyon Road."[50] Defendants believe that the State's Intent to Sue is material to "the Government's ability to prove the elements of the offenses charged."[51]

---

[46] *Browning v. Trammell*, 717 F.3d 1092, 1094 (10th Cir. 2013) (citation omitted).

[47] *United States v. Gleeson*, 411 F.2d 1091, 1093 (10th Cir. 1969).

[48] *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994).

[49] *United States v. Pearson*, 203 F.3d 1243, 1274 (10th Cir. 2000) (citation omitted).

[50] Reply at 9.

[51] *Id.*

For largely the same reasons set forth above, the State's Intent to Sue is not material because it is inadmissible to challenge the legality of the BLM's decision to close the area in question. The State's Intent to Sue is also immaterial because it does not establish an R.S. 2477 right-of-way, but simply notifies the United States Department of the Interior of the State's intent to possibly file a civil lawsuit sometime in the future based on its position that an R.S. 2477 right-of-way exists and has existed since at least 1976 on the Recapture Canyon Road.[52]

## CONSLUSION

For the reasons set forth above, it is hereby ORDERD that the Motion[53] is DENIED.

Dated October 22, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[52] *See* Notice of Intent to Sue, docket no. 185-5, filed August 25, 2015.

[53] Docket no. 185.