IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>PHILIP KAY LYMAN AND<br>MONTE JEROME WELLS,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER ON SENTENCING GUIDELINE APPLICATIONS**<br><br>Case No. 2:14-cr-00470-DN<br><br>District Judge David Nuffer |

In memoranda filed in connection with the sentencing of Mr. Lyman and Mr. Wells, the parties have disputed certain guideline applications. This order resolves those disputes.

**Contents**


A. The Presentence Report Correctly Identifies § 2B2.3 as the appropriate Base Offense Level ... 1
Prosecution's Position ... 2
Defendants' Position ... 4
Ruling 5
B. Mr. Wells Does Not Meet the Criteria for An Enhancement As A Leader or Organizer... 6
Ruling 8
C. Mr. Lyman Meets the Criteria of an Organizer or Leader ... 8
Ruling 9
D. Position of trust enhancement does not apply to Mr. Lyman ... 9
Ruling 10
E. Calculation Under Applicable Guidelines ... 12


## A. THE PRESENTENCE REPORT CORRECTLY IDENTIFIES § 2B2.3 AS THE APPROPRIATE BASE OFFENSE LEVEL

The parties dispute the guideline applicable to Defendants' offense of conviction. Defendants were convicted of 18 U.S.C. § 371 Conspiracy and 43 U.S.C. § 1733(a) Trespass.

18 U.S.C. § 371 is the Defendants' conspiracy conviction. The U.S. Sentencing Guidelines Manual ("USSG") § 2X1.1 states that the Base Offense Level for conspiracy is the

same as the Base Offense Level for the substantive offense. The substantive offense in this case is 43 U.S.C. § 1733(a), Trespass.

USSG § 1B1.2 provides the basic rules for determining the offense level guideline applicable to the offense of conviction. "The court is to use the Chapter Two guideline section referenced in the Statutory Index (Appendix A) for the offense of conviction."[1] "For statutory provisions not listed in the Statutory Index, [the Court is to] use the most analogous guideline."[2]

So, for the Conspiracy and Trespass charges, the same base offense level applies. The difference between an offense level of four and an offense level of six can mean the difference of many months of recommended incarceration.

The Presentence Report concludes that USSG § 2B2.3 is the appropriate Base Offense Level for Defendants' offense of 42 U.S.C. § 1733(a). Section 2B2.3 specifies a base offense level of 4.

**Prosecution's Position**

The Prosecution objects to the Presentence Report's conclusion that the base offense level of 4, set in § 2B2.3, applies. Instead, the Prosecution argues that the Base Offense Level should be calculated under § 2X5.2, which states it applies to "all other Class A misdemeanors" and renders a base offense level of 6. In support, the Prosecution claims that "[a]lthough Appendix A states that section 2B2.3 applies to violations of 43 U.S.C. § 1733(a), Appendix A contains a parenthetical reference limiting the applicability of section 2B2.3 only to crimes that are based on violations of 43 C.F.R. § 4140.1(b)(1)(i)."[3]

---

[1] USSG § 1B1.2(a).

[2] *Id.* (citing to §2X5.1 (Other Offenses)).

[3] United States' Position Statement on Sentencing at 11 ("Prosecution's Position"), docket no. 244, filed December 7, 2015.

| | | | |
|---|---|---|---|
| 42 U.S.C. § 16962 | 2H3.1 | 49 U.S.C. § 121 | 2B1.1 (for offenses committed prior to July 5, 1994) |
| 42 U.S.C. § 16984 | 2H3.1 | | |
| 43 U.S.C. § 1350 | 2Q1.2 | 49 U.S.C. § 1809(b) | 2Q1.2 (for offenses committed prior to July 5, 1994) |
| 43 U.S.C. § 1733(a) (43 C.F.R. 4140.1(b)(1)(i)) | 2B2.3 | 49 U.S.C. § 5124 | 2Q1.2 |

43 C.F.R. § 4140.1(b)(1)(i) only applies to trespass related to grazing:

> Persons performing the following prohibited acts on BLM-administered lands are subject to civil and criminal penalties set forth at §§ 4170.1 and 4170.2: (1) Allowing livestock or other privately owned or controlled animals to graze on or be driven across these lands: (i) Without a permit or lease or other grazing use authorization (see § 4130.6) and timely payment of grazing fees[.][4]

The Prosecution contends that because Defendants' conviction did not involve a grazing related trespass, Appendix A does not provide a Base Offense Level Guideline for Defendants' violation of 43 U.S.C. § 1733(a), so "Defendants have been convicted of a Class A misdemeanor that is not covered by any other specific guideline," and therefore, section 2X5.2 should apply.

As further support for its position, the Prosecution argues that the Presentence Report is incorrect in following § 1B1.2(a)'s requirement that the most analogous guideline be used for statutory provisions not listed in the Statutory Index because § 1B1.2(a) specifically cites to § 2X5.1 in support of this proposition, and § 2X5.1 only deals with felonies. Therefore, the Prosecution argues, § 2X5.2 (setting an offense level of 6) is the only provision that can apply to "Class A Misdemeanors (Not covered by Another Specific Offense Guideline)."[5]

[4] 43 C.F.R. § 4140.1(b)(1)(i).

[5] USSG § 2X5.2.

**Defendants' Position**

The Defendants argue that the Presentence Report correctly identifies § 2B2.3 as the appropriate Base Offense Level for Defendants' offense of 42 U.S.C. § 1733(a). Mr. Wells points out that "§ 2B2.3 is the guideline provision that is applied for all other federal trespass offenses . . . . Trespass on public lands that have been closed is similar to trespass in a government building, trespass at a national cemetery, trespass at national parks, or trespass at an airport or seaport."[6] Mr. Wells identifies many of these other trespass offenses, listed in Appendix A, which apply § 2B2.3.[7]

| | |
|---|---|
| Computer Trespass (felony) | 18 U.S.C. § 1030(a)(7) |
| Trespass on a vessel or aircraft belong to the U.S.,<br>Trespass on property owned by U.S,<br>Trespass in a secure area of an airport, or secure area of a seaport | 18 U.S.C. § 1036 |
| Trespass as stowaway in vessel or aircraft | 18 U.S.C. § 2199 |
| Trespass at Crater Lake National Park | 16 U.S.C. § 123<br>16 U.S.C. § 16 |
| Trespass in restricted government building or grounds (felony) | 18 U.S.C. § 1752 |
| Trespass by breaking or opening fences on government grounds | 18 U.S.C. § 1857 |
| Demonstrating at a national cemetery | 38 U.S.C. § 2413 |
| Trespass on U.S. Strategic Petroleum Reserve Facilities | 42 U.S.C. § 7270b |

Mr. Wells contends that the Prosecution is not logical in arguing that "trespassing in the desert of Recapture Canyon should subject an individual to a hire [*sic*] Sentencing Guideline calculation than one who trespasses at a secure airport or at a Strategic Petroleum Reserve

[6] Monte Wells Position of Party with Respect to Sentencing Factors at 12 ("Wells' Position"), docket no. 241, filed December 7, 2015.

[7] *Id.* at 11-12.

Facility."[8] Mr. Lyman similarly points out that "[t]he Government's position is not based on an argument that Mr. Lyman's offense of conviction was any more serious than any other federal trespassing offense. Indeed, such an argument would be unreasonable as it does not involve issues of national security, obstruction or (or [*sic*] damage to) critical infrastructure, or a threat to the administration of justice or national defense."[9]

Mr. Lyman contends that "[t]he Government's position is based solely on an unsupported interpretation of the use of parentheses in the Guidelines' Appendix A . . . ."[10] Mr. Lyman disputes this interpretation and argues that "[n]owhere do the Guidelines explain that parentheses are to be interpreted so narrowly, and the Government provides no such reference."[11]

**Ruling**

Courts are to "interpret the Sentencing Guidelines according to accepted rules of statutory construction."[12] According to *U.S. v. Reeves*,

> While we apply the rule of strict construction to criminal statutes, and by extension to the Guidelines, that does not mean the Guidelines must be given their narrowest possible meaning. Rather, the rule of strict construction "'is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers."[13]

Applying these interpretive principles, it is clear that § 2B2.3 is the appropriate Base Offense Level for Defendants' offense for the following reasons.

First, the Prosecution's interpretation that the use of a parenthetical automatically limits § 2B2.3 to livestock related trespass is unsupported by any text in the Guidelines. Although there

---

[8] *Id.* at 12.

[9] Defendant Phillip Kay Lyman's Objections to the Presentence Investigation Report at 2 ("Lyman's Position"), docket no. 242, filed December 7, 2015.

[10] *Id.*

[11] *Id.*

[12] *U.S. v. Reaves*, 253 F.3d 1201, 1202 (10th Cir. 2001).

[13] *Id.* at 1203 (quoting *United States v. Moore*, 423 U.S. 122, 145, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975)).

are parentheticals that do specifically limit the applicability of the section referenced—such as 18 U.S.C. § 113(a)(5) (Class A misdemeanor provisions only) and 18 U.S.C. § 1716 (felony provisions only)—the text within these parentheticals makes the limitation clear.

The parenthetical of 43 U.S.C § 1733(a) does not clearly create a *limitation* to that section. It merely *references* a federal regulation. There is no text to explain whether this parenthetical reference was included as an example, a limitation, or for some other purpose. Without more specificity, it would be improper to interpret this vague reference as a limitation.

Second, although § 1B1.2(a) references § 2X5.1 (which deals with felonies) as support for the requirement that the most analogous guideline be used for statutory provisions not listed in the Statutory Index, the language of § 1B1.2(a) does not specifically limit the use of an analogous guideline to felonies, but merely cross references "See § 2X5.1 (Other Offenses)."

Also, although the commentary of both § 1B1.2 and § 2X5.1 might suggest that the use of analogous offense levels is limited to felonies, such a limiting interpretation is unreasonable because offense level of 4 is given to many other types of trespass and to more serious types of trespass.

Accordingly, Presentence Report correctly identifies § 2B2.3 as the appropriate Base Offense Level for Defendants' offense of 42 U.S.C. § 1733(a). The base offense level of four applies.

## B. MR. WELLS DOES NOT MEET THE CRITERIA FOR AN ENHANCEMENT AS A LEADER OR ORGANIZER

The Prosecution argues that "Mr. Wells should receive a 4-level increase [pursuant to § 3B1.1] because he took an organizing role in the offense."[14] Section 3B1.1 provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants

[14] Prosecution's Position at 14.

or was otherwise extensive, increase by 4 levels." The Guideline Commentary defines a leader or organizer as follows:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.[15]
>
> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.[16]

The Prosecution bases its position on the following evidence:

> Mr. Wells met early on with Mr. Lyman and BLM State Director Palma, to discuss the upcoming illegal ride. Mr. Wells also repeatedly served as an important medium through whom Mr. Lyman was able to convey his messages about the ride to the public. Mr. Wells also added his own flourishes to recruit others to come and join the illegal ride. Mr. Wells interviewed Mr. Lyman in a three-part YouTube series so that Mr. Lyman could explain the reason for the upcoming illegal ride. After providing this extensive assistance in getting the word out about the illegal ride, Mr. Wells joined Mr. Lyman and dozens of others by crossing the line with his motorized vehicle and riding into the closed area of Recapture Canyon.[17]

In response, Mr. Wells contends that the facts do not support a finding that he was an organizer or leader. Mr. Wells points out that he "did not have any decision making authority in this case and he did not have nor did he exercise any degree of control or authority over others."[18]

---

[15] USSG §3B1.1, Application Note 2.

[16] USSG §3B1.1, Application Note 4.

[17] Prosecution's Position. at 14-15 (internal citations omitted).

[18] Wells' Position at 13.

**Ruling**

The facts do not support a finding that Mr. Wells took a significant organizing role in the offense. Mr. Wells did not exercise any decision making authority; his participation in the commission of the offense was to publicize the offense; he did not primarily recruit accomplices in person, but rather, the information on his website, a publishing platform, attracted accomplices; there is no evidence that he claimed rights to a larger share of the fruits of the offense; and he did not participate in planning the event nor did he exercise any significant degree of control and authority over others. No evidence suggests that Mr. Wells had a significant organizing role.

## C. MR. LYMAN MEETS THE CRITERIA OF AN ORGANIZER OR LEADER

Mr. Lyman disputes the Presentence Report's conclusion that he was acting as an organizer or leader in the offense.[19] Mr. Lyman provides two arguments in support of his contention. First, he states that he "had little control or decision making authority, as evidenced by the rally video wherein he attempted to convince the participants not to go through with the ride, but was pressured into going forward, and several individuals ignored his admonition to stay only on the Pipeline Road."[20] And second, Mr. Lyman argues that his conduct is not the type of criminal conduct that the Guidelines intended to punish with a four-level increase, because the enhancement pursuant to § 3B1.1 "is generally used as additional punishment for leaders of criminal organizations that conduct extensive illegal activities[.]"[21]

---

[19] Lyman's Position at 5.

[20] *Id.*

[21] *Id.* at 6.

**Ruling**

Both of Mr. Lyman's arguments are without merit. Focusing only on the day of the rally ride to show that he had little control or decision making authority is incorrect. As the Government points out, Mr. Lyman:

> (1) sent out information to his constituents and to BLM about the ride, Trial Exhibit 22, 23, 24, 26, 34C, 35A, 35C; (2) changed the date of the ride to May 10, 2014 so that "more people can come," Trial Exhibit 35A; (3) held pre-ride rallies, Trial Exhibit 19A, 46A1, 65A, 70A; (4) appeared on television, radio, and in the print media to promote the ride, Trial Exhibit 46A1, 99, 103A; and (5) instructed protestors as to which trials were legal to ride and which were not. Trial Exhibit 105A.[22]

All of the above actions by Mr. Lyman reveal a high degree of participation in and control over the circumstances leading to the offense and therefore, qualify him as a leader or organizer. Mr. Lyman's second argument also fails because the clear language of the guideline shows it applies. That most crimes are of a different nature does not limit a guideline's application or language.

**D. POSITION OF TRUST ENHANCEMENT DOES NOT APPLY TO MR. LYMAN**

Mr. Lyman disputes the Presentence Report's conclusion that he receives, pursuant to § 3B1.3, a 2-level increase for abusing a position of trust. Section 3B1.3 reads, in relevant part: "If the defendant abused a position of public or private trust, . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels."[23] In order for the enhancement to apply, Mr. Lyman had to have a position of trust and abuse the position to significantly facilitate the commission or concealment of the offense.[24] The Prosecution contends that both factors have been met. Mr. Lyman holds public office, which is a position of public

---

[22] Prosecution's Position at 14.

[23] USSG §3B1.3.

[24] *United States v. Guidry*, 199 F.3d 1150, 1159 (10th Cir. 1999).

trust.[25] And he "used his position as a San Juan County Commissioner to significantly facilitate the illegal ride."[26]

Mr. Lyman asserts that the position of trust must relate to the victim of the offense.[27] Mr. Lyman concludes that he is not subject to the position of trust enhancement because the victim is the United States, as to whom Mr. Lyman did not occupy a position of trust.[28]

**Ruling**

"The primary concern of § 3B1.3 is to penalize defendants who take advantage of a position that provides them freedom to commit or conceal a difficult-to-detect wrong."[29] In this circuit, "'whether an individual occupied a position of trust is evaluated from the victim's perspective.'"[30]

The Tenth Circuit's decision in *United Sates v. Guidry*,[31] is instructive. Defendant Guidry was a financial controller for her employer. She embezzled substantial sums of money from her employer and then failed to file tax returns that reported these sums as income. She was not charged with embezzlement from her employer, but was charged and convicted of three counts of willfully filing a false tax return. The sentencing court imposed the position of trust enhancement because Guidry abusing her position of trust with her employer. On appeal, the Tenth Circuit reversed the sentencing court's application of this enhancement "because Mrs.

---

[25] Prosecution's Position at 15.

[26] *Id.* at 16.

[27] Lyman's Position at 3.

[28] *Id.* at 4.

[29] *United States v. Koehn*, 74 F.3d 199, 201 (10th Cir.1996).

[30] *Guidry*, 199 F.3d at 116 (quoting *United States v. Trammell*, 133 F.3d 1343, 1355 (10th Cir. 1998)). *See also* Matthew S. Rozen, *Abandoning the Victim Requirement: Clarifying the Position of Trust Enhancement in Federal Sentencing*, 78 U. Chi. L. Rev. 1543 (2011) (discussing the split among the circuits regarding the relationship a position of trust must have to the victim of the offense for the purpose of enhancement).

[31] 199 F.3d 1150, 1159 (10th Cir. 1999).

Guidry did not occupy a position of trust vis-à-vis the government, the victim in this case."[32] The Tenth Circuit noted in an extensive footnote, in *Guidry*, that "[t]he Circuits are split on the relationship a position of trust must have to the victim of the offense for the purpose of enhancement."[33]

In a later unpublished decision in *United States v. Ratliff*,[34] the Tenth Circuit took a slightly different view based upon different facts. There, Ratliff opened up a bank account under her employer's name without permission. Her purpose in opening the bank account was to defraud her employer (Jim Wynn, Inc.). Ratliff was not charged with embezzlement, but instead was charged with one count of bank fraud based on the fake bank account she opened. The sentencing court imposed the position of trust enhancement based on Ratliff abusing her position of trust with her employer, Jim Wynn, Inc. On appeal, Ratliff argued that the position of trust enhancement did not apply because the position of trust must be in relation to the victim of the charged offense, which was the Bank, not Jim Wynn, Inc. The Tenth Circuit affirmed the district court's conclusion, finding that Jim Wynn, the owner of the company was, along with the bank, a victim of the bank fraud, "because his company, Jim Wynn, Inc., was the true owner of the checks that [Ratliff] converted to her own use through that fraud."[35] The Tenth Circuit further noted that *Guidry* is "clearly distinguishable because the crime in that case was filing false income tax returns, and the government was necessarily the only victim of that crime."[36]

Reading these two cases together, it is clear that Mr. Lyman is not subject to the position of trust enhancement. In *Ratliff*, the company owner (Mr. Wynn) entrusted Ratliff with her

[32] *Id.* at 1160.

[33] *Id.* at 1160, n. 6.

[34] 376 Fed. Appx. 830 (10th Cir. 2010).

[35] *Id.* at *7.

[36] *Id.*

position in the company. The company owner was damaged by her crime of bank fraud. In *Guidry*, under the crime of tax fraud, the only victim was the government, which was denied tax revenues. The employer who entrusted Guidry with her position and access was not damaged by the crime of tax fraud. In this circuit, the victim and trustor of the position of trust must be identical.

The victims of this crime—the federal government, its land management agency and the United States taxpayers—did not entrust Mr. Lyman with his position as County Commissioner. We do not have other victims or trustors in this case. Mr. Lyman's position as county commissioner gave him an opportunity to be vocal, respected and followed, and he abused that trust, but § 3B1.3 does not apply because his position was entrusted by county voters, not by the government which owns the land, the government agency which administers the land, or the United States citizens and citizens, who were all damaged by his actions.

**E. CALCULATIONS UNDER THE GUIDELINES**

Therefore, the applicable guideline calculations are:

Mr. Lyman Offense Level 4, Leader Organizer 4, total offense level 8. The guidelines recommend incarceration for 0-6 months. Probation up to five years is possible.

Mr. Wells Offense Level 4, total offense level 4. The guidelines recommend incarceration for 0-6 months. Probation up to five years is possible.

Dated December 18, 2015.

BY THE COURT:

David Nuffer
United States District Judge