JOHN W. HUBER, United States Attorney (#7226)
ALLISON J.P. MOON, Assistant United States Attorney (#15204)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone (801) 524-5682

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 2:14-CR-00470 DN |
| vs. | ) **MOTION TO AMEND THE MANNER AND SCHEDULE OF PAYMENT OF RESTITUTION** |
| PHILLIP KAY LYMAN, | ) |
| Defendant. | ) Honorable David Nuffer |

Plaintiff United States of America moves this Court to amend Defendant Phillip Kay Lyman's (Lyman) restitution payment schedule pursuant to its authority under 18 U.S.C. § 3664(k). The United States requests that the Court increase Lyman's monthly installment payments from $100.00 per month to $500.00 per month based upon a change in his economic circumstances.

**STATEMENT OF FACTS**

1. Lyman was found guilty at trial for Conspiracy to Operate Off-Road Vehicles on Public Land Closed to Off-Road Vehicles (18 U.S.C. § 371), and on December 18, 2015, the Court sentenced Lyman to ten days in the custody of the Bureau of Prisons[1] (BOP) followed by three

---

[1] Document No. 269, p. 63, ll. 20-22. Lyman's JCC indicates "NONE" as the period of confinement. Document No. 251, p. 3.

1

years' probation.[2]  The Court also ordered Lyman to pay restitution of $95,955.61 to the Bureau of Land Management (BLM).[3]

2. Lyman's co-defendant, Monte Jerome Wells (Wells), was also found guilty at trial of Conspiracy to Operate Off-Road Vehicles on Public Land Closed to Off-Road Vehicles (18 U.S.C. § 371).  The Court sentenced Lyman and Wells at the same time, and ordered Wells to spend five days in the custody of BOP[4] followed by three years' probation.[5]  The Court also ordered Wells to pay restitution of $48,000.00 to BLM joint and severally with Lyman.[6]

3. At sentencing, the Court initially ordered Lyman to pay a "minimum rate of $500.00 per month or as otherwise determined by the probation office."[7]  Then, during Wells's sentencing, Wells's counsel raised concerns about Wells's ability to pay $500.00 per month, and requested "that that be turned over to probation to monitor his financial wherewithal to make monthly payments."[8]  In response, counsel for the United States mentioned a Tenth Circuit case that prohibits "…deferring to the probation office to set the minimum amount…"[9] and the Court then reduced the monthly payments for *both Wells and Lyman* to a minimum of $100.00 per month. The Court "recommend[ed] an initial rate of 500, but the minimum would be 100 because I don't want to get the Tenth Circuit to tell me what Mr. Bennett just told me."[10]

4. Lyman has consistently paid $100.00 per month as required by the Court's order.

---

[2] Document No. 269, p. 64, ll. 17-18; Document No. 251, p. 4.
[3] Document No. 269, p. 69, ll. 6-8; Document No. 251, p. 6.
[4] Wells's JCC indicates "NONE" as the period of confinement.  Document No. 253, p. 3.
[5] Document No. 269, p. 87, l. 24 to p. 88 l. 3; Document No. 253, p. 4.
[6] Document No. 269, p. 91, l. 18 to p. 92, l. 6; Document No. 253, pp. 6-7.
[7] Document No. 269, p. 69, ll. 8-11.
[8] Document No. 269, p. 92, ll. 9-11.
[9] Document No. 269, p. 92, ll. 22-23.
[10] Document No. 269, p. 93, ll. 7-10.

Case 2:14-cr-00470-DN   Document 279   Filed 03/13/19   PageID.3601   Page 3 of 10

5. In 2017, the United States Attorney's Office Financial Litigation Unit (FLU) asked Lyman to agree to pay more than $100.00 per month towards restitution, but he refused. FLU also sought updated financial information to determine whether Lyman's economic circumstances had improved.[11] In his email correspondence to FLU, Lyman stated, "I would very much like to pay [restitution] off and put it behind me. I have contacted a realtor and told him that I would like to list all of my property. We started that process a couple of months ago and hopefully he will have them all listed soon. They are heavily mortgaged, but I am hopeful that they will generate enough to pay the BLM."[12] Despite these assurances, to date, Lyman has not listed or sold his real estate.

6. Lyman's economic circumstances improved when he was elected to the Utah House of Representatives in November 2018. According to the Report of the Utah Legislative Compensation Commission prepared for the 2018 General Session, all legislators receive a lump sum payment of $12,285.00 in January before the start of the legislative session, along with other compensation.[13] The United States has notified BLM of Lyman's change in economic circumstances as required under 18 U.S.C. § 3664(k).

7. On October 10, 2017, prior to his election to the Utah State Legislature, Lyman completed FLU's Financial Statement of Debtor form (the FLU Statement) in which he reported a total gross monthly income of ▇▇▇▇▇▇, which included ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[14] FLU estimates that he now earns an additional $1,023.75 per month in legislative compensation.[15]

---

[11] As explained below, if a defendant's economic circumstances change, the Court can amend the defendant's restitution payment schedule accordingly. 18 U.S.C. § 3664(k).
[12] Exhibit A – FLU-Lyman Email Correspondence, pp. 2-3.
[13] Exhibit B – 2018 Report of the Utah Legislative Compensation Commission, p. 6.
[14] Exhibit C – the FLU Statement, p. 7.
[15] The annual lump sum payment of $12,285.00 divided by 12 months equals $1,023.75 per month.

3

8. At FLU's request, Lyman also provided a Statement of Financial Condition and a Statement of Average Monthly Cash Flow as of December 31, 2017, which he prepared according to generally accepted accounting principles (together "Lyman's Statements").[16]

9. An analysis of Lyman's financial information shows that he is in a position to pay more than $100.00 per month towards restitution. Filed herewith as Exhibit E is a spreadsheet that FLU prepared that compares Lyman's expenses, as reported in the FLU Statement and in Lyman's Statements, to the IRS Collection Financial Standards (IRS Standards).[17] According to the spreadsheet, ████████████████████████████████████████████████████████████████████████████████████████████████



10. Lyman was released from BOP's custody on April 28, 2016, and therefore his restitution judgment will expire on April 28, 2036.[18] There are 205 months remaining on the life of the judgment. Lyman's current restitution balance is $90,105.61. At his current payment rate of $100.00 per month, he will only pay another $20,500.00 before the judgment expires. However,

---

[16] Exhibit D – Lyman's Statements.
[17] https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards
[18] A restitution judgment expires "…the later of 20 years from the entry of judgment or 20 years after the release from imprisonment…" 18 U.S.C. § 3613(b).

if the Court increases his monthly payments to $500.00, he will pay the judgment in full within 181 months – about two years before the judgment expires.[19]

11. Lyman's term of supervision expired on December 17, 2018.[20] Before his supervision expired, FLU asked Lyman to sign a stipulated installment order agreeing to continue paying $100.00 per month. Lyman refused. FLU informed Lyman through his Probation Officer that his duty to pay restitution did not end with the expiration of supervision, and Lyman has continued paying $100.00 per month since his supervision expired.

## AUTHORITY AND ARGUMENT

### I. The Court should increase Lyman's monthly restitution payments to $500.00 per month because his economic circumstances have improved.

Lyman's economic circumstances improved in November of 2018 when he was elected to the Utah House of Representatives. In January 2019, Lyman presumably received a lump sum payment of approximately $12,287.00 as compensation for his service.[21] This additional income supplements the income Lyman reported in 2017 in the FLU Statement and in Lyman's Statements.[22] 18 U.S.C. § 3664(k) authorizes the Court to amend a defendant's restitution payment schedule when his or her economic circumstances change. Specifically, the statute states:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims

---

[19] This calculation does not account for Wells's monthly payments of $100.00 towards the Defendants' joint and several debt. Taking Wells's payments into account, the judgment should be satisfied even sooner.
[20] Document No. 277.
[21] This figure is based on the Report of the Utah Legislative Compensation Commission prepared for the 2018 General Session. Exhibit B. The exact payment amount for the 2019 General Session is not readily available.
[22] Exhibits C and D.

> owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

Here the interests of justice require that Lyman's monthly payments be increased based on his increased ability to pay his restitution debt.

The United States Code offers several guideposts for setting an appropriate restitution payment schedule. First, 18 U.S.C. § 3664(f)(2) provides:

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the defendant; and
> (C) any financial obligations of the defendant; including obligations to dependents.

In addition to these guideposts, 18 U.S.C. § 3572(d)(2) provides that the court should order the defendant to pay restitution in "…the shortest time in which full payment can reasonably be made."

The United States has analyzed Lyman's economic circumstances according to the 18 U.S.C. § 3664(f)(2) factors, and recommends that the Court order him to pay $500.00 per month towards restitution. Both the FLU Statement and Lyman's Statements show ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████, Lyman could easily afford to pay $500.00 per month towards restitution.

6

At a rate of $500.00 per month, Lyman would pay restitution in full about two years before the judgment expires. If Lyman's co-defendant, Wells, continues paying $100.00 per month towards their joint and several debt, the debt will be satisfied even sooner. Lyman might be able to pay even more than $500.00 per month, and it is within the Court's discretion to order any amount that it determines would serve the interests of justice, but the United States would be satisfied with the modest monthly payment of $500.00, because at that rate the restitution judgment would be paid in full before it expires on April 28, 2036.

"The interests of justice" are important in another respect in this case. Although the direct payee of Lyman's restitution is BLM, ultimately, his victims are the taxpayers who provided the public funds that were spent to assess and repair the damage caused by Lyman's Recapture Canyon protest ride. As a State Representative, Lyman now receives publicly-funded income as compensation for his public service. In short, Lyman receives income from the people to whom he owes restitution, and it would be an injustice to the public if Lyman were to fail to repay his debt. As an elected public official, and as a recipient of publicly-funded income, Lyman has a heightened moral obligation to repay his debt to BLM, and by extension, to the public. For this reason also, the United States respectfully asks this Court to raise Lyman's monthly restitution payment obligation to $500.00 per month.

## II. The Court determined at sentencing that Lyman had the ability to pay $500.00 per month based on his economic circumstances at that time.

At sentencing, the Court initially ordered Lyman to pay restitution at a minimum rate of $500.00 per month, but due to concerns about *Wells's* ability to pay $500.00 per month, and concerns about Tenth Circuit precedent regarding improperly delegating payment schedules to Probation, the Court reduced the monthly payments for both Wells and Lyman to a minimum of

7

$100.00 per month. The Court then "recommend[ed] an initial rate of 500, but the minimum would be 100 because I don't want to get the Tenth Circuit to tell me what Mr. Bennett just told me."[23]

The case Mr. Bennett was referring to is *United States v. Overholt*, 307 F.3d 1231 (10th Cir. 2002). In this case, one of the defendants appealed and challenged his restitution order on several grounds. One of his arguments was that the restitution order failed to set a reasonable payment schedule because the court ordered restitution due immediately, even though he did not have the resources to pay it immediately, and therefore, he argued, the schedule "was essentially delegating the preparation of a payment schedule to the Bureau of Prisons and the probation office." *Id.* at 1255. The Tenth Circuit held that 18 U.S.C. § 3664 "clearly contemplates judicial control of restitution payment schedules," and stated, "we see no room for delegation by the district court with respect to payment schedules for restitution." *Id.* at 1255-56. The Tenth Circuit acknowledged that a defendant's economic circumstances may change over time, and stated that the proper mechanism for adjusting the defendant's payment schedule to fit his or her economic circumstances is through a court order amending the schedule pursuant to 18 U.S.C. § 3664(k).

In practice, Probation can and does ask defendants to *agree* to pay an amount different from the amount ordered at sentencing, and the defendant can enter into such an agreement with Probation, but if the defendant refuses to pay a different amount, only the Court has the authority to order a new payment schedule that is binding on the defendant. Mr. Bennett was correct that delegating the responsibility of setting a payment schedule to Probation is reversible error, and the Court was correct to set a minimum payment requirement, rather than delegating this duty to Probation as Wells's counsel had requested. However, it appears there was a misunderstanding

---

[23] Document No. 269, p. 93, ll. 7-10.

about Probation's ability to raise the payment amount where appropriate. The discussion regarding payment schedules, and the Court recommendation of an initial payment rate of $500.00 per month, suggest two things: (1) that everyone believed Probation had the ability to adjust the payment schedule; and (2) that the Court determined that Lyman, and possibly Wells, could afford payments of $500.00 per month. The Court should raise Lyman's restitution payment schedule to $500.00 per month, because that was the parties' intentions at the time of sentencing, and his election to the State Legislature has put him in an even better position to be able to pay that amount.

Finally, the Court should raise Lyman's monthly payment amount because Lyman will not voluntarily agree to pay a greater amount. He has made it very clear, through his interactions with Probation and with FLU, that he will not pay a penny more than what the Court orders.

## CONCLUSION

For all the foregoing reasons, the United States respectfully requests that the Court increase Defendant Phillip Lyman's restitution payments schedule to $500.00 per month, or to any amount that the Court determines would best serve the interests of justice.

DATED this 13th day of March, 2019.

JOHN W. HUBER
United States Attorney

*/s/ Allison J.P. Moon*
ALLISON J.P. MOON
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that I am an Assistant United States Attorney for the District of Utah, and that copies of the UNITED STATES' MOTION TO AMEND THE MANNER AND SCHEDULE OF PAYMENT OF RESTITION, exhibits thereto, and the [PROPOSED] ORDER AMENDING THE MANNER AND SCHEDULE OF PAYMENT OF RESTITUTION were served upon the parties by placing a copy of same in the United States mail, postage prepaid, this 13th day of March, 2019, addressed as follows:

>(un-redacted copies sent to)
>Mr. Phillip Lyman
>1401 North Blue Mountain Road
>Blanding, UT 84511
>
>(redacted copies sent to)
>Mr. Monte Wells
>216 West Center Street
>Monticello, UT 84535

*/s/ Allison J.P. Moon*
Allison J.P. Moon, AUSA