JOHN W. HUBER, United States Attorney (#7226)
ALLISON J.P. MOON, Assistant United States Attorney (#15204)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone (801) 524-5682

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:14-CR-00470 DN |
| vs. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE MANNER AND SCHEDULE OF PAYMENT OF RESTITUTION** |
| PHILLIP KAY LYMAN, | |
| Defendant. | |
| | Honorable David Nuffer |

The United States has moved to amend Defendant Phillip Lyman's restitution payment schedule from a minimum of $100 per month to $500 per month based upon his new source of income as a State Representative (herein "the United States' Motion" or "the Motion").[1] In Mr. Lyman's Response to the United States Motion,[2] he argues that his annual income has actually decreased by $25,000 per year with his election to the Utah State Legislature. By so arguing, Mr. Lyman establishes that his economic circumstances have changed, which authorizes this Court to adjust his payment schedule under 18 U.S.C. § 3664(k) "as the interests of justice require." Although Mr. Lyman argues that his income has decreased, he does not argue that he cannot afford

---

[1] Document No. 279.
[2] Document No. 280.

1

to pay $500 per month towards restitution. The United States will show that, even assuming his income has decreased as he claims, Mr. Lyman is more than able to pay $500 per month. Finally, Mr. Lyman argues that the criminal case and restitution order against him are unjust, and accuses the United States of improper motives. The merits of Mr. Lyman's conviction and restitution order are already adjudicated, and the United States will not re-litigate them here. As to the United States' motive, the United States is simply seeking to collect a debt, and Mr. Lyman's accusations are misplaced.

### 1. Mr. Lyman establishes that his economic circumstances have changed, and therefore, this Court has the discretion to adjust his payment schedule.

By arguing that his annual income decreased by $25,000 per year when he left his position as San Juan County Commissioner to take the position as Utah State Representative, Mr. Lyman establishes that his economic circumstances have changed.[3] He is correct that the United States overlooked the fact that when he acquired a new source of income as Representative he also gave up a source of income as County Commissioner, but in the end this matters little because *any* material change in the defendant's economic circumstances allows the Court to adjust the defendant's payment schedule to serve the interests of justice. And even with his allegedly decreased income, Mr. Lyman can afford to pay $500 per month towards restitution.

18 U.S.C. § 3664(k) provides that when a defendant experiences "any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution … the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." The

---

[3] Document No. 280, p. 1.

Tenth Circuit has twice held that the court can *only* adjust a defendant's restitution payment schedule under § 3664(k) when the defendant's economic circumstances materially change.[4] *United States v. Simpson-El*, 856 F.3d 1295 (10th Cir. 2017) (affirming district court's adjustment of restitution upon material change of circumstances because, although defendant's receipt of a $200,000 settlement payment did not increase his monthly income, it made cash more readily available); *United States v. Grigsby*, 665 F. App'x 701, 706 (10th Cir. 2016) (unpublished) (affirming the district court's order to liquidate the defendant's retirement account, holding "we conclude that the district court correctly held that the discovery of the concealed retirement account qualified as a change in economic circumstances for purposes of 18 U.S.C. § 3664(k)").

Mr. Lyman argues that his annual income decreased by $25,000 with his election to the Utah State Legislature, and by so arguing, Mr. Lyman establishes that his economic circumstances have materially changed. This Court, therefore, has the discretion to adjust Mr. Lyman's payment schedule under § 3664(k).

### 2. The interests of justice require Mr. Lyman to pay at least $500 per month towards restitution, even assuming his alleged reduction in income.

When a defendant's economic circumstances change, the law requires the court to adjust his or her restitution payment schedule "as the interests of justice require." § 3664(k). Here, the interests of justice require an increase in Mr. Lyman's restitution payments. The law does not require the court to lower a defendant's payments, or even maintain them at the same amount,

---

[4] This is why the United States has not previously moved to increase Mr. Lyman's monthly payments, even though it appears that, at the time of sentencing, the Court had determined that Mr. Lyman could afford to pay $500 per month. Document No. 269, p. 93, ll. 7-10 ("THE COURT: …I'm going to go to a minimum of $100.00. I'm recommending an initial rate of 500, but the minimum would be 100 because I don't want to get the Tenth Circuit to tell me what Mr. Bennett just told me.") As far as the United States knows, Mr. Lyman did not experience a material change in his economic circumstances until he was elected to the Utah State Legislature.

when a defendant's economic circumstances worsen.  Although this might sometimes be the just result, there are many possible situations where this result would be unjust.  For example, in *United States v. McClamma*, 146 F. App'x 446 (11th Cir. 2005), the Eleventh Circuit upheld the district court's denial of the defendant's motion to lower his monthly restitution payments based upon his new agreement with the IRS to pay $700 per month towards past due taxes.  The Eleventh Circuit found that:

> the district court did take notice of McClamma's new $700 monthly obligation to the IRS and analyzed its impact. That new obligation notwithstanding, the district court found that McClamma was still paying $1,500 per month in restitution while also paying to credit card companies at least $827 per month more than the monthly minimum payments. Thus, by reducing the amount paid to credit card companies to the monthly minimums, the district court found that McClamma would have the ability to pay $2,200 per month in restitution.

*Id.* at 449.  The Eleventh Circuit also noted that "the district court found incredible McClamma's claim that he had $4,818 in monthly obligations apart from the restitution obligation." *Id.* at 448. What *McClamma* tells us is that, regardless of whether the defendant's economic circumstances have improved or worsened, his or her payment schedule should be based upon his or her ability to pay.  Here, the court should increase Mr. Lyman's monthly payments, even though Mr. Lyman argues that his annual income has decreased, because Mr. Lyman always could, and still can afford to pay $500 per month.

    Mr. Lyman does not argue in his Response that he lacks the resources to pay $500 per month towards restitution, nor does he provide any evidence to support such a claim.  In fact, he

declines to provide any specific financial information with his Response.[5] Under 18 U.S.C. § 3664(e), "[t]he burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." Mr. Lyman has failed to meet this burden, and, on this basis alone, the Court could increase Mr. Lyman's monthly payments. The burden on a moving party under § 3664(k) is merely that it provide "notice" to the Court of a change in the defendant's economic circumstances. However, the United States will go beyond the notice requirement, and will affirmatively demonstrate that Mr. Lyman can afford to pay $500 per month, even assuming that his income has decreased.

To determine an appropriate restitution payment schedule, the Court should consider the factors set forth under 18 U.S.C. § 3664(f) – the defendant's financial resources and other assets, his projected earnings and other income, and his financial obligations – as well as the 18 U.S.C. § 3572(d)(2) mandate that the defendant shall be ordered to pay restitution in "the shortest time in which full payment can reasonably be made." The most recent financial information available to the United States from Mr. Lyman are the "FLU Statement," dated October 10, 2017, and "Lyman's Statements," dated December 31, 2017, which the United States previously filed as Exhibits C and D to its Motion,[6] as well as the evidence of Mr. Lyman's new income as a State Representative, and Mr. Lyman's assertions regarding his discontinued County Commissioner income. Filed herewith as Exhibit E1 is an updated spreadsheet that synthesizes the foregoing

---

[5] Document No. 280, p. 7 ("Knowing that this information I am providing can and will be used against me, I will not provide any more information about my financial situation in this brief.")
[6] Document No. 279-3 and Document No. 279-4, respectively.

financial information,[7] and compares Mr. Lyman's income and expenses to the IRS Collection Financial Standards (IRS Standards).[8&9]

As reported, ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ Put another way, he is currently spending 287.7% of the necessary life expenses permitted under the IRS Standards. As in McClamma, Mr. Lyman's excessive expenses demonstrate his ability to pay significantly more than $100 per month towards restitution.

Mr. Lyman also owns significant real estate holdings, including his home and six parcels of commercial real estate in Blanding, Utah. In Lyman's Statements, Mr. Lyman estimated ██ ████████████████████████████████████████████ ██████████████████████████ The value and equity of Mr. Lyman's

---

[7] ████████████████████████████████████████████████████████████████████████████████████

[8] https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards

[9] The IRS Standards are intended for use in calculating repayment of delinquent taxes. Although they are authoritative in that context, in this context, where the United States seeks to enforce a restitution judgment, they are merely a tool for analyzing a defendant's economic circumstances, and they do not have legal authority.

[10] ████████████████████████████████████████████████████████████████████████████████████

[11] Document No. 279-4, p. 1.

[12] Document No. 279-3, p. 5.

commercial property is more difficult to determine because he gave conflicting accounts of its value and equity. ███████████████████████████████████████████

███████████████ ███████████████████████████████████████████

█████████████████████████████████████████████████ By both estimates, Mr. Lyman holds equity in his commercial properties. However, because this information is inconsistent, and therefore unreliable, the United States has independently analyzed the value of Mr. Lyman's commercial property.

The United States recently consulted an appraiser familiar with the Blanding real estate market, who estimated that the commercial properties are worth a total of about $400,000. The United States also contacted the San Juan County Recorder's office by telephone who reported that Zions Bank recorded a Deed of Trust against the commercial property in 2012 that purports to secure a debt in the amount of $282,190. Therefore, the United States believes there is at least $117,810 net equity in Mr. Lyman's commercial properties, and likely more, as the loan balance has undoubtedly been paid down over the last seven years. In total, the United States conservatively estimates that Mr. Lyman's real estate holdings contain net equity of approximately $202,511.

The above analysis of Mr. Lyman's assets, income, and expenses clearly shows that he has the ability to pay $500 toward restitution, and therefore, ordering him to do so would serve the interests of justice. Raising Mr. Lyman's monthly payments to $500 would also serve the interests

---

[13] ███████████████████████████████████████████████████████████████████████████

[14] ███████████████████████████████████████████████████████████████████████████

of justice in two other important ways. First, it would ensure that Mr. Lyman's restitution debt would be paid in full before the judgment expires. Second, it would ensure that Mr. Lyman, who receives a publicly-funded income, would also pay his public debt.

## CONCLUSION

For all the foregoing reasons, the United States respectfully requests that the Court increase Defendant Phillip Lyman's restitution payments to $500 per month, or to any amount that the Court determines would best serve the interests of justice.[15]

DATED this 4th day of April, 2019.

JOHN W. HUBER
United States Attorney

*/s/ Allison J.P. Moon*
ALLISON J.P. MOON
Assistant United States Attorney

---

[15] Mr. Lyman devotes the bulk of his Response to accusing the United States of politically-motivated malice, conspiring with the media to harass and defame him, and collusion with the Court and environmentalist groups, among other things, as well as to challenging the merits of his case and restitution order. Mr. Lyman's conviction and restitution order were upheld on appeal, and his complaints about his trial and about judicial bias were found to be meritless. *United States v. Wells*, 873 F.3d 1241 (10th Cir. 2017). Equally meritless are Mr. Lyman's claims that the United States colluded with the media or accompanied the media to Blanding. The United States' Motion is nothing more than a routine attempt to collect a restitution debt. Because these meritless arguments are no substitute for actual evidence of Mr. Lyman's financial condition, he has failed to carry his burden of proof and should be ordered to pay at least $500 per month towards restitution.

**CERTIFICATE OF SERVICE**

    I hereby certify that I am an Assistant United States Attorney for the District of Utah, and that copies of the UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE MANNER AND SCHEDULE OF PAYMENT OF RESTITUTION and exhibits thereto were served upon the parties by placing a copy of same in the United States mail, postage prepaid, this 4th day of April, 2019, addressed as follows:

        (un-redacted copies sent to)
        Mr. Phillip Lyman
        1401 North Blue Mountain Road
        Blanding, UT 84511

        (redacted copies sent to)
        Mr. Monte Wells
        216 West Center Street
        Monticello, UT 84535

                                */s/ Allison J.P. Moon*
                                Allison J.P. Moon, AUSA